UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| TERRI R.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Cause No. 2:17-cv-465-WTL-MJD |
| | ) |
| NANCY A. BERRYHILL, Deputy | ) |
| Commissioner for Operations, Social Security | ) |
| Administration,[2] | ) |
| | ) |
| **Defendant.** | ) |

# ENTRY ON JUDICIAL REVIEW

Plaintiff Terri R. requests judicial review of the final decision of Defendant Nancy A. Berryhill, Deputy Commissioner for Operations of the Social Security Administration ("Deputy Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court rules as follows.

## I. PROCEDURAL HISTORY

The Plaintiff protectively filed her applications for DIB and SSI on August 4, 2014, alleging an onset of disability on April 1, 2010. The Social Security Administration ("SSA")

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] It has come to the Court's attention that on March 6, 2018, the General Counsel of the U.S. Government Accountability Office (GAO) notified the President that effective November 17, 2017, Nancy A. Berryhill could no longer serve as the "Acting Commissioner" of the Social Security Administration pursuant to the Federal Vacancies Reform Act of 1998, Pub.L.No. 105-277, Div. C, Title I, 112 Stat. 2681-611 (Oct. 21, 1998), as amended, 5 U.S.C. §§ 3345-3349d. GAO, https://www.gao.gov/products/D18772#mt=e-report (last visited Sept. 14, 2018). The caption has been updated to reflect Ms. Berryhill's current official title.

initially denied the Plaintiff's applications on October 31, 2014. After she timely requested reconsideration, SSA again denied her claims on January 2, 2015. Thereafter, the Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). An ALJ held a hearing on August 3, 2016, at which the Plaintiff and a vocational expert ("VE") testified. The ALJ issued his decision denying the Plaintiff's applications on October 11, 2016. After the Appeals Council denied her request for review on August 1, 2017, the Plaintiff filed this action seeking judicial review on October 5, 2017.

## II. **EVIDENCE OF RECORD**

The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

## III. **APPLICABLE STANDARD**

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A).[3] In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, the Deputy Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).

---

[3]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to DIB sections only.

2

At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Deputy Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month durational requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony presented," he must "provide an accurate and logical bridge between the evidence and [his] conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

## IV. THE ALJ'S DECISION

The ALJ found at step one that the Plaintiff had engaged in substantial gainful activity ("SGA") since the alleged onset date "during the following periods: May 2013-August 2013;

3

January 2014-March 2014; May 2014-August 2014; and 2015 until July 2016." R. at 22 (citations omitted). However, based on a finding that the Plaintiff had not engaged in SGA during a continuous period of twelve months following the alleged onset date, the ALJ continued the sequential evaluation process to assess disability during the entire period at issue. At step two, the ALJ determined that the Plaintiff had the severe impairments of lumbar disc disease, bilateral knee impairments, carpal tunnel syndrome, obesity, depression, and anxiety. The ALJ found at step three that the impairments, or combination of impairments, did not meet or equal the severity of one of the listed impairments. The ALJ's residual functional capacity ("RFC") determination was as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant could balance, stoop, kneel, crouch and crawl occasionally. The claimant could climb ladders, ropes, scaffolds, ramps and stairs only occasionally. The claimant could frequently but not constantly handle, finger and feel bilaterally. The claimant must be allowed to sit after thirty minutes of being on her feet for five minutes during which she could continue to work and by so alternating could work throughout the day. The claimant is restricted to performing simple, routine, unskilled tasks away from the public and could tolerate only occasional interaction with the public.

R. at 26. The ALJ concluded at step four that the Plaintiff was capable of performing her past relevant work as a small products assembler. However, the ALJ alternatively found at step five, based on VE testimony considering Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that she could perform, including as an injection mold machine tender, housekeeper, and mail room clerk. Accordingly, the ALJ concluded that the Plaintiff was not disabled.

## V. **DISCUSSION**

The Plaintiff argues that a host of issues necessitate remand. The Court will address specific issues as necessary to resolve this appeal.

## A. Moderate Limitations of Concentration, Persistence, or Pace

The Plaintiff asserts that the ALJ's RFC finding does not adequately capture the full limitations that the ALJ found to be supported by the record when he assessed the Plaintiff's "paragraph B" criteria.[4] The ALJ found that the Plaintiff had moderate difficulties in two broad areas: social functioning and "with regard to concentration, persistence or pace." R. at 25.

Regardless of the basis, a hypothetical question put by the ALJ to the VE "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994); *Indoranto v. Barnhart*, 374 F.3d 470, 473-74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."); SSR 96–5p (S.S.A.), 1996 WL 374183, at *5 (RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence"); 20 C.F.R. § 404.1545. "Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (citing *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)). "Although it is not necessary that the ALJ use the precise terminology of 'concentration,' 'persistence,' or 'pace,' we will not assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record."[5] *Id.* at 814 (citing *Yurt*, 758 F.3d at 857).

---

[4] The limitations identified in the "paragraph B" criteria are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. 20 C.F.R. § 404.1520a(d)-(e). However, the RFC assessment used at steps four and five requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorder listings. Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184 at *4.

[5] There is no indication in this case that the VE was otherwise apprised of the full limitations supported by the record beyond the described limitations that were specifically conveyed to the VE in hypothetical questioning from the ALJ and the Plaintiff's representative.

The Seventh Circuit has repeatedly expressed its concerns with translating moderate limitations of concentration, persistence, and pace into limitations as to the skill level demands of a job. "In most cases, however, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (citing *Stewart*, 561 F.3d at 684-85 (limiting hypothetical to simple, routine tasks did not account for limitations of concentration, persistence, and pace); *see also Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (restricting hypothetical to unskilled work did not consider difficulties with memory, concentration or mood swings)). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620 (citing *Stewart*, 561 F.3d at 684-85; *Craft*, 539 F.3d at 677; *see also* SSR 85-15 (S.S.A. 1985) 1985 WL 56857 at *6 ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.")). "[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt*, 758 F.3d at 858-59.

Here, the ALJ attempted to account for the Plaintiff's mental difficulties by limiting the Plaintiff's RFC in relevant part: "claimant is restricted to performing simple, routine, unskilled tasks away from the public and could tolerate only occasional interaction with the public." R. at

---

The ALJ's step four and step five findings depended on the VE's testimony given in response to one of those particular hypotheticals.

26. The ALJ noted elsewhere in the decision that the state agency psychological consultants opined both the moderate difficulties with the paragraph B criteria and the specific limitation(s) "to performing unskilled tasks with superficial interaction," which the ALJ found were consistent with the full evidence of record. R. at 31.

The Court agrees with the Plaintiff that the RFC limitation to simple, routine, unskilled tasks does not adequately capture temperamental deficiencies with concentration, persistence, or pace as required by Seventh Circuit precedent. Because the RFC as described in the decision and as described in relevant part to the VE in identical terms does not in any way limit concentration, persistence, or pace, remand is required for further proceedings to ensure that the VE is fully apprised of the Plaintiff's limitations before offering testimony about the Plaintiff's ability to perform work at steps four and five. In addition, with regard to the Plaintiff's moderate difficulties of social functioning, the RFC finding limits the Plaintiff to "only occasional interaction with the public," R. at 26, which differs from the limitations that were actually conveyed to the VE during hypothetical questions describing an individual who must "be away from the public and have only occasional interaction with supervisors and coworkers." R. at 58. The limitations as actually described to the VE appear to reflect the particular social difficulties the ALJ found were supported by the record, which the limitation contained in the RFC does not.

The Court has considered the Deputy Commissioner's argument that the ALJ was entitled to rely on the state agency consultants' narratives, which are identical, to articulate the specific limitations supported by the record. However, the Court finds the argument without merit based on the specific facts of this case.

> This circuit has declined to adopt a blanket rule that checked boxes in Section I of the MRFCA form indicating moderate difficulties in mental functioning need not be incorporated into a hypothetical to the VE. In fact, in *Yurt*, we explicitly rejected the argument that "we should be unconcerned . . . with the failure of the ALJ to mention the . . . areas where [the state psychologist] found moderate

7

> limitations because the narrative portion of the form adequately translated these
> limitations into a mental RFC that the ALJ could reasonably adopt."

*Varga*, 794 F.3d at 816 (quoting *Yurt*, 758 F.3d at 858). As the Deputy Commissioner observes, the most recent of the identical state agency consultant's assessments found the Plaintiff to be moderately limited as to specific functions found in Section I of the MRFCA, including the ability to "maintain attention and concentration for extended periods," R. at 175, and "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," R. at 175-76. The state agency consultant's narrative limiting the Plaintiff to unskilled work (and with interaction) is not consistent with those specific assessments. Accordingly, the ALJ was not entitled to rely on the inconsistent narrative.

The Deputy Commissioner further notes that the Seventh Circuit has "let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace[,]' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner*, 627 F.3d at 619; *see also Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002) (concluding that substantial evidence supported the denial of disability benefits where the ALJ's mental RFC assessment and hypothetical to the VE failed to explicitly note the three areas referenced by one consultative physician that the claimant was "moderately limited")). The Seventh Circuit explained in *Yurt*: "[W]e allowed the hypothetical in *Johansen* to stand despite its omissions because its description of 'repetitive, low-stress work' specifically excluded positions likely to trigger the panic disorder that formed the basis of the claimant's limitations in concentration, persistence, and pace." *Yurt*, 758 F.3d at 858 (citing *O'Connor-Spinner*, 627 F.3d at 619 (collecting and distinguishing cases, including *Johansen*, upholding hypotheticals that omitted restrictions in "concentration, persistence, and pace")). However, in this case the Plaintiff's mental difficulties, including those

with concentration, persistence, and pace, stem from a combination of depression and anxiety, which cannot be wholly mitigated by excluding the Plaintiff from those situations that are likely to trigger panic attacks. Accordingly, unlike the cases cited in *Yurt*, in this case remand is required to remedy the ALJ's failure to account for the Plaintiff's limitations in concentration, persistence, and pace.

### B. Step Three Listings Findings

The Plaintiff argues that the ALJ did not sufficiently explain how he concluded that the evidence of record did not support a finding that her back impairment meets the severity of Listing 1.04. The Plaintiff contends that the ALJ was not entitled to rely on the state agency assessments because they did not specifically address any of the relevant listings that would be used to evaluate her physical impairments. In a related argument, the Plaintiff asserts that the ALJ was not entitled to rely on the state agency assessments as to medical equivalence. In support of her argument, the Plaintiff points out that the consultants did not review the updated medical evidence of record, including particular diagnostic imaging.

To prove presumptive disability by meeting the severity of a listed impairment, a claimant must establish, with objective medical evidence, all of the criteria specified in the listing. *See* 20 C.F.R. § 404.1525; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) ("The applicant must satisfy all of the criteria in the Listing in order to receive an award of" benefits at step three.). In the alternative, a claimant can establish "medical equivalence" in the absence of one or more of the findings if they have other findings related to the impairment or have a combination of impairments that "are at least of equal medical significance." *See* 20 C.F.R. § 404.1526(a)-(b). "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004). Moreover, "longstanding

9

policy requires that the judgment of a physician (or psychologist) designated by the [Deputy] Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p (S.S.A. July 2, 1996), 1996 WL 374180 at *3.

The Court does not find sufficient evidence to establish that the Plaintiff's lumbar disc disease meets Listing 1.04. The Plaintiff presents evidence of record that nearly satisfies the requirements of Listing 1.04(A). To establish Listing 1.04(A), the regulations require:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1. The Plaintiff cites to an MRI of her lumbar spine taken March 9, 2016, which shows "moderate to severe left foraminal compromise with neural impingement" at L5-S1. R. at 603. The impingement satisfies the diagnostic requirement of the listing. Additionally, the Plaintiff cites to clinical findings showing corresponding motor loss with decreased muscle strength in the left lower extremity, *id.* at 547, and positive straight-leg raising tests both sitting and supine, *id*. at 546. However, the Plaintiff does not present evidence demonstrating that the motor loss is accompanied by sensory or reflex loss. Accordingly, the Court cannot find that the Plaintiff is able to demonstrate presumptive disability based on meeting Listing 1.04.

Furthermore, the Court does not find merit with the Plaintiff's argument that the state agency consultant's assessments did not consider the relevant physical listings. The Seventh Circuit has held that an ALJ may rely on forms completed by the state agency consultants as substantial evidence that those experts concluded that no listing was met or equaled, even in the absence of articulating such reliance in the written decision. *Scheck v. Barnhart*, 357 F.3d 697,

700-01 (7th Cir. 2004) (citing *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)); SSR 96-6p, 1996 WL 374180 at *3. While the state agency consultants did not specifically reference the relevant listings by name or number, their assessment of the Plaintiff's RFC and completion of the disability transmittal forms creates a presumption that they considered the listings based on the evidence of record that they reviewed.

However, the Plaintiff's argument that the ALJ was not entitled to rely on this presumption as to the entire record because the consultants did not review important updated medical evidence is well-taken. "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) as amended on reh'g (Apr. 13, 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny)). The ALJ acknowledged that the updated medical evidence showed an increasingly severe combination of impairments than were present at the time of the last state agency consultant's assessment. "The [state agency consultant's] opinion is well grounded in the objective medical evidence. However, the preponderance of the evidence now shows a more complicated condition with additional severe impairments and somewhat greater restrictions." R. at 29. Despite recognizing this, the ALJ did not resubmit the record to an expert to make the required medical finding regarding listing equivalence based on the new evidence. The ALJ's failure to seek additional expert guidance was reversible error. The last state agency consultant provided an assessment on December 31, 2014, reviewing diagnostic imaging that included an x-ray of the Plaintiff's knee showing mild degeneration and an MRI of her lumbar spine taken October 21, 2014. *Id.* at 173-

11

74. The lumbar MRI showed "no foraminal stenosis." *Id.* at 558. By contrast, the updated 2016 MRI noted above showed moderate to severe foraminal stenosis with impingement of the spinal cord. Given that the updated MRI meets the diagnostic criteria of the Listing 1.04(A), which had not been previously established by the remote 2014 MRI, the new diagnosis appears potentially significant in evaluation of the Plaintiff's claim. Additionally, the updated record included new MRI imaging of the Plaintiff's bilateral knees with findings that precipitated surgical intervention during the period covered by the updated record after the last review. *Id.* at 674; R. at 697-98. As the Deputy Commissioner points out, the ALJ did review the updated medical evidence in the decision. However, the ALJ's own review of the significant medical updates is not a substitute for the required medical finding of an expert as to medical equivalence. Nor is the Court able to conclude that increasingly severe back problems and bilateral knee problems would not have equaled a listing in combination. Accordingly, the Court finds that remand is required for a full evaluation of the limiting effects of the Plaintiff's combined impairments.

### C. Additional Arguments

The Court has reviewed the Plaintiff's additional arguments and finds that they are either moot in light of the findings above or are without merit.

### VI. CONCLUSION

For the reasons set forth above, the decision of the Deputy Commissioner is **REVERSED** and this case is **REMANDED** to the Deputy Commissioner for further proceedings consistent with the Court's Entry.

SO ORDERED: 9/18/18

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication